and that is United States v. Rosado. All right, Mr. Noble, you have reserved three minutes for rebuttal. So that gives you seven minutes to start. Yes, Your Honor. Thank you, Your Honor. Good morning, and may it please the Court. My name is Daniel Noble. I represent the appellant, Leonardo Hector Rosado, and I did not represent Mr. Rosado below. Over 35 years ago, in United States v. Fontanez, this Court said that a district court must, quote, vigorously safeguard a criminal defendant's right to be present at trial. Respectfully, the district court failed to do so here. Well, I mean, he failed to show up for the second day of trial, I mean, after it had already started, right? He, well, the first day of trial, Your Honor, when it was scheduled, he did not leave his jail cell, and that's when the district court did a use of force. Well, I mean, before he had been in court with his lawyer and with the judge and the jury, right? He appeared for jury selection, which was two days prior, and then the first day when the trial was scheduled to begin, he did not leave his jail cell. There was colloquy with the attorneys, the AUSA and defense attorney. On the record, the AUSA requested a use of force order, which the Court signed, and then Mr. Rosado was brought the next day. You know, we haven't even recognized that somebody who has started trial, been at trial, knows that trial is going forward and then doesn't show up. That's the equivalent of a verbal act that, in many cases alone, would be enough to I think under certain circumstances, yes, but this is a situation where Mr. Rosado was present and where the Court attempted to solicit. Well, later he was present. I mean, so the district court then basically put off the trial to get to the bottom of this. For one day, yes, Your Honor, because there was. You're saying the Constitution required that. The Constitution, had the judge just said, we're going forward. He knows to be here. I'm going to view this as a verbal act to not be here. That would have been a constitutional violation. I believe it would have, Your Honor, especially in these circumstances where the Court itself recognized on that day when Mr. Rosado did not appear, that there may have been confusion by Mr. Rosado about whether or not the Court had ruled on his interlocking motion. Why does that matter? So unless the Court had ruled on his prior motions, he has a right not to go to trial? Well, I think there was. The Court has to determine whether or not he's waiving his right to appear at trial knowingly and voluntarily. If there is massive confusion, as there was in this case, on the defendant's part about the nature of the proceedings. Well, he never, at no point did he ever say, and I'm jumping ahead now to when he actually came to court, but at no point did he ever say, I was confused as to whether I had to be here, did he? Well, the Court itself had, no, he was confused as to whether or not the Court had ruled on his motion. But whether or not the Court had ruled on his motion, he didn't say, oh, well, I didn't think I had to be here because I didn't know you ruled on my motion. He didn't. First of all, say he didn't know whether the Court ruled on his motion. And second of all, he didn't say, that's the reason why I didn't show up. He did not say that. But, Your Honor, respectfully, the duty was on the district court to conduct a searching inquiry to determine whether or not Mr. Rosado was knowingly and voluntarily waiving his right to appeal or his right to appear, including whether or not he was even competent. I mean, respectfully, Your Honor, we would submit that this Court should compare what happened here, which took place, the colloquy that took place in the course of maybe 10 to 15 minutes, compare that to what a district court normally does when a defendant wants to plead guilty and waive his or her right to go to trial at all, which the Supreme Court and the Supreme Court and this Court has repeatedly said the right to appear at one's own criminal trial is nothing short than the right to a trial in the first place. This Court requires strict adherence to the requirements of Rule 11, which gets at the defendant's competence, his intelligence, and his — the voluntariness of whether a plea. And respectfully, the district court here — But was his competence ever at issue? I mean, he'd been before Judge Specter a few times, and he'd filed various pretrial motions which were coherent. Was there any indication at all that he was not competent? Well, respectfully, Judge Kearney, I don't think his pretrial motions — he was pro pressure, I would say. I don't think they were necessarily that coherent. They appeared to have been written by, you know, jail — jailhouse attorneys. But he'd been before Judge Specter as well. I mean, the point is the Court had some prior experience with him, didn't it? Yes, Your Honor. I mean, I would — what I would submit is the case was reassigned to the district court judge after Judge Specter had conducted that. It was previously assigned to Judge Chotney. But I think looking at what happened before Judge — Magistrate Judge Specter is really illustrative here of how short the district court itself fell from conducting a searching inquiry to determine whether or not Mr. Rosado was knowingly and voluntarily waiving. In that proceeding before Judge — Magistrate Judge Specter, he conducted — he asked all of the questions of both Mr. Rosado and his counsel that you would normally expect a court to ask, including questions that go to competence, like age, education, facility with the English language, et cetera. The district court didn't ask any of those questions in here. But I was — I was a little more concerned about his statements suggesting that he knew that if he testified or appeared, he'd get a longer period of incarceration. Absolutely, Judge Carnegie. Absolutely. But that was based on prior experience appearing in trial and being convicted of a — He testified at a prior — his prior criminal trial, and it was his perception that he was penalized at sentencing for having taken the stand. And, you know, but — but the — the problem here is the district court didn't disabuse him of that notion that if he took the stand and testified and testified truthfully in his own defense, that he could still get punished more if he testified. And — and that pattern happened repeatedly during the colloquy. There were so many times when Mr. Rosado said things that didn't make sense, and the district court just never followed up. So, for example, the district court never followed up when Mr. Rosado said his attorney had only explained more or less the significance of waiving his right to go to trial. He didn't say only more or less. He basically answered the question in the affirmative saying more or less, not in those explicit words. You're kind of shading this, aren't you? No. He said, he only told me more or less, Judge. No, I say — He needed more. Your Honor, I believe if Your Honor had conducted this — this colloquy, this inquiry, Your Honor would have followed up with a — with a response from a defendant where if you asked a lawyer or asked a defendant, did you have enough time to discuss this with your lawyer, did your lawyer explain this, and the defendant responded more or less, I believe it's — you know, it behooves the district court to follow up on that, to make sure that Mr. Rosado did, in fact, have sufficient time to discuss this with his lawyer, who I would point out was just recently appointed. We haven't established best practices or a checklist. We're basically here to determine whether or not your client knowingly and intentionally waived his right to trial. And he did say, I don't want a trial. I'm not in agreement with anything that has to do with this trial. So if you want to have it without me, that's fine. He said, me not wanting to be at the trial is the same as not wanting to testify. When informed that, it means you're not going to get to testify. In fact, he was angered that he was brought to court because he felt he was being punished for not wanting to go to trial. Right? Well, Your Honor, there is those things that he did say on the record. But, again, there are countervailing issues that I — that we would submit are extremely problematic, where he — We are on a plain-error review, too, right? No, Your Honor, not necessarily. This Court has never held that under these circumstances, plain error would apply. The only case that the government points to is the Salim case, which I know Judge Walker is familiar with. And that was the case that's extremely different circumstances. It was a resentencing. He was represented there. No — no objection of the type you're making. Yeah, there was no objection by his own counsel. But this — it's a strange circumstance where the court conducts the colloquy and the counsel doesn't object. And once Mr. Rosado himself was removed, the court never gave him another opportunity to change his mind, to weigh in, to — Is there any indication in the world that he would have done that, could have changed it? It seemed to me that the lawyer, his lawyer, was just simply following his client's directions. Judge Walker, I think the — He's not going to come to court. The one indication we — I apologize, Your Honor. Well, that's my point. Yeah. It didn't seem to me that this was a situation where there was any question about his knowledge or whether he wanted to go to court about it. I think it was — I think the combination, the confusion of whether or not the court had ruled on his pending motion, which he thought could stop the trial if the Second Circuit were to intervene and grant an interlocutory appeal, or if the trial proceeded, it could be meaningless because the Second Circuit might still take up his appeal. There was definitely confusion there, combined with the district court's failure to fully inquire and do a searching inquiry. But setting aside the knowingness and voluntariness — And I see my time is over, so please stop me if you'd like me to stop. But I do think the factor — the other factor that this court has to look at and the district court was supposed to look at was whether there was really a controlling public interest to conduct a trial in absentia. Trials in absentia are so rare. And really, there was no controlling public interest here. This was an extremely short narcotics trial that took place in a day and a half. We were on — this was a Friday before a holiday weekend. The court easily could have adjourned it until the following Tuesday and still have completed the trial by the time that the district court had advised the jury the trial would be done, which was the following Thursday, the 23rd. So — So why wouldn't the judge have done that? I mean, based upon the information that the judge had at that point. I didn't want him to come to court. And — but on the other hand, maybe if he waited a few days, he'll change his mind. Is that — is that what — I think, in essence, the judge never asked whether or not Mr. Rosado had had enough time to consult with his attorney. Is there anything to suggest that he didn't have enough time? Yeah, there is, because, Your Honor — Why? Why? He only was able to meet with — the attorney was only able to meet with Mr. Rosado briefly after he'd been forced to come to court early that morning, right before the colloquy. It was — it was — he was only allowed a little bit of time to meet with Mr. Rosado. So — Did he ask for more time? Yeah. Did his counsel ask for more time? No, his counsel did not ask for more time, but the court also didn't inquire whether counsel would want more time or Mr. Rosado would want more time. The court is — the court is, in some sense, based — operating on the basis of what the lawyer's telling — In part — Or not telling. And not necessarily — you're saying that the judge had an independent duty to kind of inquire into all of this, apart from what his lawyer was doing. Yeah, I — I guess he superseded his lawyer. Yeah, that is — that is our — that is my argument, Judge Walker, is that — and I believe it's this Court's holding that a district court has an independent obligation to make this inquiry. But at no point between the trial and sentencing did Mr. Rosado or his lawyer or anybody say, oh, listen, he was really confused in that time around when he didn't come to trial. That was never said. It's been said for the first time on appeal, right? Well, Judge — Am I right? The only thing that happened — Just answer my question. Is that yes or no? If I can — Did he ever say anything before appeal about being confused or not understanding his rights with respect to not going to trial? Not about being confused or not understanding, but about — he said that he didn't — it was never his — he never wanted not to go to trial. He said that at sentencing. And that's in the record. So — and again, the district court never followed up on that. And granted, his lawyer never followed up on that. But Mr. Rosado did say at sentencing that it was not that he didn't want to go to trial. So there is some confusion in the record. So what was that? It was not that. It was what? It was that he wanted a fair plea offer. Right. Well, I mean, that's a very different statement. It's not that I didn't want to come to trial. I wanted a different outcome. Yeah. You know, Your Honor, I think this just goes back to — you know, this is a situation where this Court could set an example for district courts in terms of the searching inquiry that should be conducted in this context. The Court has not laid that out, as it's done in the Rule 11 context, in the Curcio context, or in, you know, the right to waive going to trial. And I would submit, you know, if you look at Judge — at U.S. v. Nichols, Judge Walker, which I know you're very familiar with, where you reviewed what Judge Corman in the Eastern District did when he had a very — a much more difficult defendant trying to waive his right to go to trial, Judge Corman bent over backwards to ensure that the defendant understood the gravity. Notwithstanding anything his own attorney was doing, Judge Corman went down to the jail cell, the holding cell, to talk to the defendant himself, to try to convince him and to explain to him how important it is for a defendant to appear at trial. He piped into audio and visual. And it was only on those remarks — We rejected the notion that we would require the defendant's personal statement in court to bring about a constitutionally valid waiver. We allow waivers by implied verbal acts, right? But I don't think the conduct here was sufficiently implicit to show that Mr. Rosado was waiving. This is a situation where it's an explicit waiver or a purported explicit waiver based on a colloquy where the Court was supposed to make the findings of, is it knowing, is it voluntary, is he competent, and is there a controlling public interest in continuing this trial in his absence? Well, you've got three minutes for rebuttal, so you're getting your money's worth, but thank you. Thank you, Your Honor. We'll now hear from Mr. Cummings. Good morning, and may it please the Court. My name is Daniel Cummings, and I represent the government in this appeal. The District Court did not err, plainly or otherwise, when it allowed Mr. Rosado to absent himself from his trial consistent with his repeated expressed wishes, which he communicated both to the Court during an extensive colloquy and to his own counsel. First, Judge Thompson's finding that Mr. Rosado had knowingly and voluntarily waived his right to be present was not clear error because it was supported by ample record evidence, specifically two grounds. First, Judge Thompson engaged in a thorough colloquy with Mr. Rosado when he informed him of his right to be present, the presumption of innocence he kept with him throughout trial, and the benefits of attending his trial, including his ability to assist his counsel in preparing and presenting his defense. Judge Thompson also advised Mr. Rosado of the disadvantages of being absent from his trial, including that he would not be able to exercise his right to testify on his own behalf if he were absent. Mr. Rosado, in response to these advisements from the Court, indicated that he did understand he had the right to be present, but he stated emphatically that he did not wish to attend his trial. He also acknowledged understanding the advantages of being present and the disadvantages of being absent. Beyond that colloquy, though, as Your Honor noted in questioning counsel for Mr. Rosado, the district court could also have found the plea no — the waiver knowing and voluntary based on Mr. Rosado's decision to intentionally absent himself from the proceedings after they began, knowing that they were going to begin. During the colloquy with Mr. Rosado, Judge Thompson told him, if at any time you decide you want to attend, simply let us know and we'll make it happen. And Mr. Rosado, nonetheless, chose to remain in his jail cell and did not attend the proceedings. As this Court has repeatedly held, the willful and intentional failure to attend a trial after knowing when it is going to begin is a ground for a district court to find that the defendant is knowingly and voluntarily waiving his right to attend. So let me ask you the same question I asked Mr. Noble. So if on the day that Mr. Rosado did not arrive, the judge just said he knows he's got to be here, he was here previously, he knows we've got a jury, he knows everything, we're going forward. I'm not wasting the jury's time. He's going forward in abstention. I'm going to deem this to be basically a verbal act and waiver. Would that have been sufficient? I think so, Your Honor. I think the district court does have a duty to inquire into what it does know about the defendants. Well, it tried to and he didn't show up for a video conference that was scheduled that same day, right? That is right, Your Honor. And specifically here, his lawyer told the district court, I spoke with him, he says he does not want to come. So this fact pattern distinguishes this case from one in which the defendant's whereabouts are unknown and his absence is unknown and the district court doesn't know is he injured, is he in another agency's custody. Here we know exactly where he is and we know why he's not attending. So to answer Your Honor's question, yes, I think that on its own would have been sufficient for the district court's finding to be sustained. So in other words, the district court did not have to issue a forced order to bring this about? No, it didn't. But I think that that shows that the district court wanted to get this right and wanted to speak to Mr. Rosado face-to-face to make sure that he truly did understand the ramifications of choosing not to attend his trial here. And although this court has never prescribed a list of canvas questions that a court has to ask, it did, at least in Nichols, say that any assessment into the knowing and voluntariness of a waiver needs to assure the court needs to assure itself that the defendant first knows that he has the right to attend, which Judge Thompson did here, and the ramifications of giving up that right, which Judge Thompson also did. Having made that finding, the district court then acted within its wide discretion in choosing to proceed with the trial in Mr. Rosado's absence and did not. So what is the reason that you think he had to start trial that was the compelling reason to proceed without him here? I think there are several, Your Honor. I think, one, they had already lost the day of the trial schedule because of Mr. Rosado's unanticipated absence, which nobody was prepared for. The number of the government's witnesses were traveling out of state. They had conflicting trial schedules. The government had put on the record that it would not be easy to reschedule them. Additionally, a jury had been empaneled, and it would create an inconvenience if the court had to re-empanel another jury. There's two additional reasons that I think should be given great weight that the district court relied on. One was not allowing defendants, essentially, to dictate the pace or schedule of the trial. And two, as the court recognized in Nichols, this is a case where the defendant's absence is due to sheer willfulness. He is choosing not to come. It's not a case where the defendant, through— There was the confusion about whether the interlocutory appeal order had been granted or not, and the timeline on that is still really not entirely clear to me. And there's a statement that he was afraid that he was going to get more time if he showed up and testified that it happened before. So those are confusions that could have been dispelled had the district court been a little more action-oriented and had the lawyer pressed that as well. Yes, Your Honor. Although, I think, as to the first point on the motion for the interlocutory appeal, the district court did take steps to clarify that issue, including having the order emailed to Mr. Rosado that day. But wasn't that day being — wasn't that the day of trial? The first day that he abstained.  So that was when he was absent. It was. Yeah. So, I mean — Well, notably, the following day, Mr. Rosado was brought before Judge Thompson, and nobody mentioned the motion for the interlocutory appeal at that point. Not Mr. Rosado, not his lawyer. In fact, Mr. Rosado gave a list of grievances to the district court, and that one was notably absent. So if that was the reason, and it's never been definitively concluded that it was, but if that was the reason, he wasn't there. Well, it's never been even asserted that it was. His lawyer somewhat alluded to it. He said that — or, I'm sorry, I think it was the deputy marshal had made a comment of he vaguely referenced some motion that was pending. But nobody — Mr. Rosado certainly never made that assertion, and I don't think his attorney did. But in any event, the following day, Mr. Rosado was very clear about why he didn't want to come. He didn't believe he had gotten a fair offer from the government. He didn't believe that the trial court was ruling in his favor enough. He never said, well, and my motion has not yet been ruled on. So I think by that point — Was the defendant aware of the fact that the trial would go forward with that? Well, certainly when Judge Thompson brought him in front of him, I think that — He made it clear at that time that if you don't come, we're going to proceed anyway. Yes, and I think that's clear from the fact that the trial court went through all the advantages of being there and the harms that he would not be there. Well, that's a little different from saying, and I've got a jury waiting, and we're going to start hearing government witnesses whether or not you're here. That's a little different. The costs and benefits of his attending is, I'm saying, is a little different from knowing — the defendant's knowing that if this is a plan on your part to try and postpone this trial, forget it. That's a good point, but I think the district court also followed up by saying, if you change your mind and you want to come, let us know. And he even warned him — So he made it clear that there wouldn't be a trial, let them go on, and the defendant was free to come. Yes, Your Honor. And turning to the district court's assessment of the public interest in proceeding, the final prong there was — Well, I think the point that you made earlier, at least in making an adversary can respond to this, is that at some point you just say, if you're a trial judge, I can't let the defendant decide how we're going to proceed here, whether we're going to have a trial or not. And basically the position that he was taking, at least one could infer, is that he wanted to delay the trial, put off the trial, or something of that sort. And that could never be the case. I think that's right, Your Honor. Mr. Rosado himself even said, as Your Honor noted, that sentencing — I never even wanted a trial, I just wanted a fair offer. It's also been noted in this Court's case law that where the situation is that the defendant is choosing not to attend, really the district court — there's nothing much the district court can do at that point to change the defendant's mind. It's not a situation where the defendant, for example, intentionally fled and was captured in another jurisdiction, and if we wait two more days, we can have him brought back into court. Here, it's a matter of Mr. Rosado saying, I don't want to come. And the district court could wait days and days and weeks and weeks, hoping that he changes his mind, and we never get to that point. All right. The third requirement for plain error review is, of course, that the defendant show that he has been prejudiced and that the integrity of the judicial process has been questioned, and I would submit that none of the arguments he advances in favor of that. But your adversary is making a point that maybe plain error review is the wrong standard here, that somehow this isn't like a trial error. This is more fundamental. There's constitutional rights, et cetera. And therefore, plain error review is the wrong one. I'm just going to look at this. Well, this Court has applied plain error review to a number of fundamental constitutional rights and has never accepted any right from plain error review. And if I could, I did find two cases in which the Court applied plain error review to an analogous right, which is the right to a public trial, which, of course, would be structural error if it were properly objected to. And in those cases, the Court said the error was not objected to, so we're going to apply plain error notwithstanding the fact that this would otherwise be structural. And I can provide the site if the Court's interested in those cases. Well, do you have those cases? They're not in the brief, I take it. They're not. This was an issue that I encountered in the reply brief, so I didn't have a chance to look into it. Those are U.S. v. Gomez, 705 F. 3rd, 68, pages 74 and 75, and U.S. v. Mendonca, M-E-N-D-O-N-C-A, 88, F. 4th, 144, page 152. And I see I'm over my time, so if I could just briefly conclude. Because ample record evidence supported the district court's finding that Mr. Rosado's plea was knowing and voluntary and the district court acted within its wide discretion in choosing to continue the trial in Mr. Rosado's absence, the district court did not commit plain error, and this Court should affirm. Thank you. Okay. Thank you. Mr. Noble, you have three minutes for rebuttal. Thank you, Your Honor. And I'd like to start with Judge Walker's question about structural error. I'd also point the Court to U.S. v. Kennedy. I don't have the site, but it's this Court's case, C-A-N-A-D-Y. And that's a situation where it was actually a bench trial where the district court, instead of delivering the verdict in open court with the defendant present, went ahead and just mailed the verdict to the parties. And this Court held that that won. That was a structural error. That rose to the level of a structural error such that the defendant didn't even have to prove that there was any prejudice because it was so important to the structure of a criminal proceeding for a verdict to be announced publicly in court, notwithstanding the fact there was no objection because there was no opportunity to object because the Court just went ahead and mailed the verdict. This Court reversed. There's ample opportunity to object to the voluntariness of the waiver at the trial, during the colloquy with the judge, and up through sentencing. Well, I would point out, Your Honor, that the district court actually never asked counsel whether or not this was an adequate, like he believed that his client was competent and had knowingly and voluntarily waived his right to trial. That was never asked of counsel. Of course, no, Your Honor. There was no objection. There was no Rule 33 motion. I can't change the record on that. But to Judge Walker's point, I think this is a situation where, assuming Mr. Rosado did not knowingly and voluntarily waive and that there was not a controlling public interest in proceeding with a trial in absentia, excluding wrongfully a criminal defendant from an entire trial, from jury addresses to the delivery of the verdict, I think it's so anathema to — I thought it was quite the opposite. The defendant was invited to come at any time. It's not like you shut out. I'm sorry. We're going to have a trial. I know you'd like to be here, but we're not going to let you come. That wasn't the situation. He was effectively shut out, respectfully, Judge Walker, because when the trial judge at defense counsel's suggestion said, if Mr. Rosado changes his mind, I'll allow him to come back, but then never provided a mechanism to change his mind. As the record shows — Could he put a force order every day to bring him in to see if maybe he changed his mind? Or at least inquire with the facility?  The lawyer is in touch with him. His lawyer speaks for him. At no point did the lawyer say he changed his mind, either during the trial or after the trial. I mean, you're floating hypotheticals here. There's nothing in the record to support this, right? I'm pointing to U.S. v. Nichols where Judge Corman provided a mechanism to make sure the defendant was informed about the trial, even though he didn't want to be and had every opportunity to change his mind. And troubling here, Judge Corman — Any constitution requires that. I believe it does. I believe that this report should do what Judge Corman did, bend over backwards to protect a defendant's right to be present to make sure he's knowingly — or make sure he's knowingly and voluntarily and competently waiving it and that there's a controlling public interest to proceed. You have my arguments. Thank you, Your Honors. Thank you. Thank you both. We will reserve decision.